Howard Kinney et al., Plaintiffs-Appellants, v. County Board of School Trustees of La Salle County, Illinois et al., Defendants-Appellees.

**Gen. No. 10,841.**

Second District.

October 11, 1955.

Released for publication October 31, 1955.

Walter D. Boyle, of Hennepin, for appellants.

McNeilly, Ryan & Olivero, of Peru, for appellees.

MR. JUSTICE EOVALDI delivered the opinion of the court.

This is an action under the Administrative Review Act for review of the decision of the County Board of School Trustees of La Salle County, Illinois, wherein 6¼ sections of territory were detached from Magnolia-Swaney Consolidated High School District No. 533 of Putnam, Marshall and La Salle Counties, Illinois, and annexed to Lostant Community High School District No. 400 of La Salle and Marshall Counties. Plaintiffs appeal from the judgment of the circuit court of La Salle County affirming the decision of the County Board of School Trustees.

The complaint was filed by three plaintiffs as taxpayers in High School District No. 533, one plaintiff being the owner of real property in the territory detached. The defendants were the County Board; the individuals who filed their petition to detach from said High School District No. 533 and to annex to High School District No. 400; Charles Kaiser, individually and as Principal of Magnolia-Swaney High School; William H. Glover, individually and as County Superintendent of Schools of Putnam County, and J. Frank Short, individually and as Assistant to Superintendent of Public Instruction.

Pursuant to the provisions of Article 4B of the School Code (Ill. Rev. Stat. 1953, chap. 122, par. 4B—1 et seq. [Jones Ill. Stats. Ann. 123.754B(1) et seq.]), a petition was filed with the County Board of School Trustees of La Salle County requesting a detachment of 6¼ sections of land from the Magnolia-Swaney High

288

School District No. 533 and annexation of same to Lostant High School District No. 400 signed by more than two-thirds of the voters of the territory. After timely notice, a hearing was conducted, at which evidence was heard, which resulted in a decision granting the petition to detach and annex.

The County Board of School Trustees for answer to plaintiffs' complaint filed the record of the proceedings before it, including a transcript of the evidence heard by it. The case was heard by the circuit court on this record.

Appellants contend that the decision of the County Board of School Trustees is against the manifest weight of the evidence, and that the decision is in violation of the statute involved.

Article 4B–5 of the School Code (Ill. Rev. Stat. 1953, chap. 122, par. 4B—5 [Jones Ill. Stats. Ann. 123.754B (5)]) provides for review of decisions of the County Boards of School Trustees in accordance with the provisions of the "Administrative Review Act," and provides further that "The decision of the County Board of School Trustees shall be deemed an 'administrative decision' as defined in section 1 of the 'Administrative Review Act' " (Ill. Rev. Stat. 1953, chap. 110, par. 264 et seq. [Jones Ill. Stats. Ann. 104.094(1) et seq.]), the latter act providing (par. 274 [Jones Ill. Stats. Ann. 104.094(11)], sec. 11, Scope of Review) as follows:

"The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."

■■ The changing of boundaries of a school district is a legislative act, and in performing this function the County Board of School Trustees is acting as an agent of the legislature. Sec. 1, Article VIII, Constitution of Illinois, 1870; chap. 122, par. 4B—1 et seq., Ill. Rev. Stat. 1953; People v. Deatherage, 401 Ill. 25, Husser v. Fouth, 386 Ill. 188. The findings of an administrative agency are deemed to be prima facie correct

and the court is not authorized or privileged to substitute its judgment for that of the agency unless the findings of the agency are not supported by substantial evidence. Produce Terminal Corp. v. Illinois Commerce Commission ex rel. Peoples Gas Light & Coke Co., 414 Ill. 582; Department of Public Works & Bldgs. v. Lewis, 411 Ill. 242; Mohler v. Department of Labor, 409 Ill. 79; People ex rel. Loughry v. Board of Education of Chicago, 342 Ill. App. 610. This is particularly true where the administrative body is vested with discretion in making a determination. Smith v. Board of Education of Oswego Community High School Dist., 405 Ill. 143; People ex rel. Loughry v. Board of Education of Chicago, supra.

Appellants contend that there is no evidence that the change by the County Board of School Trustees will be for the best interests of the schools of the area and for the educational welfare of the pupils. No requirements are set forth in the statute that the County Board of School Trustees should make certain specific findings of fact in arriving at its conclusions. In the case of People ex rel. Harty v. Gulley, 2 Ill.App.2d 321, the Appellate Court for the Fourth District construed section 8–6 of the School Code of 1949 which was then in force, which authorized the county judge to determine whether or not a petition for the change of boundaries for a school district should be granted. The court there held that inasmuch as the statute did not require the county judge to make any specific findings upon which his determination was based, none could be read into the statute by judicial construction.

It is admitted that these standards are general rather than specific in nature and the standards set forth grant to the County Board of School Trustees a certain amount of discretion. As stated by our Supreme Court in School District No. 79 v. County Board of School Trustees of Lake County, 4 Ill.2d 533, pp. 537 and 538, in upholding the constitutionality of the sections of the

statute in question, "It would be both impossible and undesirable for the legislature to draft rigid nondiscretionary standards which would embrace each and every school district boundary change, for conditions surrounding the changes are seldom the same."

The petition which was filed with the County Board of School Trustees of La Salle County was signed by all of the voters residing in the disputed territory except two. One was in Detroit for a visit and the other could not be found at home. However, the wife of the latter signed. Forty-nine residents of the territory signed the petition.

All of the territory described in the petition is in the Lostant Grade School District and the Magnolia-Swaney High School District (hereinafter referred to as Swaney). There are three students of high school age residing in the disputed territory and several children of grade and pregrade school age. Most of the territory is considerably closer to Lostant than it is to the Swaney school. The people living in the territory do most of their trading and banking, and attend church, in Lostant, La Salle or Streator. In going to La Salle or Streator they travel through or towards Lostant and in the opposite direction from Swaney. All of the high school students in this territory now attend and for years past have attended Lostant High School even though the territory is in the Swaney High School District. No student from this territory has attended the Magnolia-Swaney High School in the past ten years, and only one in the past twenty years. She went to Magnolia High School before it was consolidated with Swaney. The same school buses are used by both the Lostant Grade School and the Lostant High School carrying both grade and high school students. These buses from Lostant now cover the territory in dispute and give very good service. The children going to Lostant schools do not have to change buses. The children in the Swaney High School Dis-

trict who attend the Swaney High School ride the bus to the Village of McNabb where they change buses to go to the high school. In bad weather, no shelter is provided for them to wait in unless they go in to the bank building in McNabb. The roads running through this territory east to Lostant are good gravel roads that are always open. There are times in the winter and spring when the roads running west from the territory to the Swaney High School are impassable. At times the Swaney buses did not operate when the roads were posted by the Road Commissioner, but the Lostant buses never missed a day. There are no restaurants or business establishments close to the Swaney High School, the closest business being a tavern about a mile from the school. Neither school has a hot-lunch program, but there are two restaurants about two blocks from the Lostant High School where quite a few children eat.

All of the residents of the disputed territory who testified were in favor of granting the petition. They all had children and they wanted their children to go to high school where they went to grade school, namely in Lostant. No resident of the disputed territory objected to the granting of the prayer of the petition.

On the above state of facts, we cannot say that the decision of the County Board of School Trustees of La Salle County is against the manifest weight of the evidence. The finding and decision of that body in detaching the disputed territory from the Swaney High School District and annexing same to the Lostant High School District is amply supported by the evidence and is within the authority of said board. It cannot, therefore, be disturbed by this court.

It is next contended by appellants that the Swaney School will operate with a net annual deficit in its educational fund of $3,572.22, when the maximum tax rate is extended, if the territory in question is detached, and that the school will be unable to meet the

292

standards of recognition of the Superintendent of Public Instruction. A school district has no vested right to retain territory within its boundaries, as a method has been provided whereby legal voters or landowners who desire to do so may detach their property from one school district and annex it to another. People ex rel. McLain v. Gardner, 408 Ill. 228; Pritchett v. County Board of School Trustees of White County, 5 Ill.2d 356. School districts are entirely subject to the will of the legislature. They may be divided, expanded, united or abolished at the will of the legislature. Pritchett v. County Board of School Trustees of White County, supra; People v. Deatherage, 401 Ill. 25, at p. 32; People ex rel. Dixon v. Community Unit School Dist. No. 3, 2 Ill.2d 454, at p. 466. In the latter case, where the people living in the detached territory—District No. 4—contended that they would be left without a schoolhouse and the assessed value would be reduced to such an extent by the disannexation as to render it financially unable to construct a new building and to maintain and operate a school, the court, at page 467 stated, that, as it had indicated, "it is not necessary that District No. 4 build, maintain or operate a school, or even continue as a school district." In the case of People ex rel. Warren v. Drummet, 415 Ill. 411, at p. 421, our Supreme Court had this to say:

"Plaintiff also directs attention to the fact that the Rutland districts were left with assessed valuations too low to enable them either to maintain a school or to pay tuition based upon the per capita cost of education elsewhere. On that basis it is contended that the children residing within such districts are deprived of the right to receive the free education guaranteed by section 1 of Article VIII of our constitution. This contention lacks merit. Adequate provisions are included in the School Code whereby the objection can readily be obviated."

293

■ It is further contended by appellants that the decision of the circuit court is in violation of section 4B–3 of the School Code, chap. 122, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 123.754B(3)], and is therefore void, in that Lostant High School District is not shown to have a population of 2,000 after granting of the petition. We do not read that section of the statute to apply to a case of annexation to an existing school district, but we read it to apply to the creation of a new district. Article 4B is entitled: "Creation of New Districts And Change of Boundaries of Existing Districts." An examination of the applicable sections of Article 4B clearly evidences the intention of the legislature to authorize the County Board of School Trustees to act in two different types of situations, (1) the creation of new school districts, and (2) the changing of boundaries of existing school districts. Section 4B–3, relied on by appellants, provides that "No petition shall be granted under Sections 4B–1 or 4B–2 of this Act: . . . (b) unless after granting the petition any community unit district or high school district *created* shall have a population of at least 2,000. . . ." The procedure for creating any school district of less than 2,000 is clearly set forth in subsection (d) thereof.

■■ It is admitted that Lostant High School District had been in existence many years before the filing of the petition to detach from Magnolia-Swaney High School District and to annex to Lostant High School District. Words should be given their commonly accepted meaning unless otherwise defined by the legislature. The language of the statute is clear and unambiguous. Where the language used in a statute is plain and certain it must be given effect by the courts. Smith v. Board of Education of Oswego Community High School Dist., 405 Ill. 143, at p. 148. Construction of a statute is necessary only where the statute is ambiguous, Bergeson v. Mullinix, 399 Ill. 470, at p. 479, and the courts will give the words of the statute their

plain meaning, Lindley v. Murphy, 387 Ill. 506, at p. 515. In this case we think the statute is clear, and needs no further construction than to read the provisions thereof. People v. Lund, 382 Ill. 213, at pp. 215–216.

The judgment of the circuit court in affirming the decision of the County Board of School Trustees is affirmed.

Judgment affirmed.

DOVE, J., concurs.