**Decided September 9, 1986**

FILED

86 SEP 9 P1:04

COPY BY

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

COMMONWEALTH OF THE NORTHERN )    CIVIL ACTION NO. 86-577
MARIANA ISLANDS, )
          )
        Plaintiff, )
          )
      vs. )
          )
LORD INTERNATIONAL, INC., )
SUMITOMO CONSTRUCTION COMPANY,)
LTD., ASANUMA GUMI CO., LTD., )
MIDEAST SYSTEMS AND CHINA )
CIVIL CONSTRUCTION SAIPAN )
JOINT VENTURE, BARING )
INDUSTRIES, INC., TURNER )
INTERNATIONAL (MICRONESIA) )
INC., and SPACE DESIGNS, INC.,)
          )
      Defendants. )
          )

## STATUS OF CASE

Except for a very limited matter, which will be discussed further in respect to the motion brought by Turner International (Micronesia) Inc. (Turner), there are no factual disputes surrounding the motions before the court. Additionally, except in the case of Turner, all the appearing defendants are in the same position as subcontractors.

This litigation was prompted by a demand for arbitration in Honolulu, Hawaii, filed by Lord International, Inc. (Lord) with the American Arbitration Association (AAA). This demand

is dated May 12, 1986 and presumed to have been filed with the AAA on or about that time.

The Commonwealth of the Northern Mariana Islands (CNMI) filed the complaint in this case for declaratory judgment on June 17th asking for a declaration that Lord and all other defendants (except Turner) are not entitled to arbitration.

The relationships of the various parties are rather straightforward. CNMI entered into a contract with Turner in March of 1983 for the construction of a multi-million dollar hospital on Saipan, Mariana Islands. Turner subcontracted most of the work to the other defendants in this case. Lord contracted to do the electrical work, Asanuma Gumi Co. (Asanuma) contracted to do general construction and landscaping, Sumitomo Construction Company (Sumitomo) contracted to do the mechanical work and Baring Industries (Baring) contracted to provide specialized hospital equipment. The two remaining defendants, Mideast System and China Civil Construction Saipan Joint Venture (Mideast) and Space Designs, Inc. (Space) have not filed an appearance. Mideast was to do the site preparation for the hospital while Space was to provide certain furnishings. All of these sub-contracts were executed following the CNMI and Turner general contract.

Apparently the CNMI and Turner had difficulties in their relationship and in July of 1985, the CNMI terminated Turner as its general contractor and pursuant to the terms of the general contract the CNMI took over as the general contractor and all

of the subcontracts were assigned by Turner to the CNMI. The court is informed that the CNMI and Turner are now engaged in an arbitration proceeding with hearings to commence in Honolulu shortly.

All parties concede that for the purposes of the motions now before the court, the CNMI stands in the shoes of Turner in so far as the subcontracts are concerned.

### THE CONTRACT PROVISIONS

There is no dispute over the fact that Turner and the CNMI have an arbitration provision in their contract. This is evidenced by Article 16 of the Turner/CNMI General Contract attached to the Ishii affidavit as Exhibit A.

As a part of the general contract, the CNMI and Turner entered into the "General Conditions of the Contract for Construction," attached to the Ishii affidavit as Exhibit B. Of particular note is Article 5, subparagraph 5.3.1 which states in pertinent part:

> 5.3 SUBCONTRACTUAL RELATIONS
>
> "5.3.1 By an appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by these Documents, assumes toward the Owner and the Architect. Said agreement shall preserve and protect the rights of the Owner and the Architect under the Contract Documents with respect to the Work to be

performed by the Subcontractor so that the subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the Contractor-Subcontractor agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Documents, has against the Owner. ....

The agreements between Turner and its subcontractors are in the form as evidenced by Exhibit C attached to the Ishii affidavit.

The second paragraph of Article II states:

"With respect to the work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to the Owner (CNMI) and to Turner by each and all of the terms and provisions of the General Contract and the other Contract Documents, and to assume toward the Owner and Turner all of the duties, obligations and responsibilities that Turner by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that the Owner and Turner shall have the same rights and remedies as against the Subcontractor as the Owner under the terms and provisions of the General Contract and the other Contract Documents has against Turner with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. The terms and provisions of this Agreement with respect to the Work to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the General Contract and the other Contract Documents."

## QUESTION PRESENTED

DO THE SUBCONTRACTORS HAVE THE RIGHT TO HAVE THEIR GRIEVANCES SUBMITTED TO ARBITRATION BY VIRTUE OF THE TERMS OF THE GENERAL CONTRACT, GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION, AND THE SUBCONTRACTS?

## DISCUSSION

Since the CNMI has assumed the obligations of Turner to its Subcontractors, the issue sub judice can be further simplified to determine if Turner would have been required to submit subcontract claims to arbitration.

The Subcontractors argue that since Turner (CNMI) and the Subcontractors agreed to be bound by the terms and provisions of the General Contract, the arbitration provisions in Article 16 are to be read into the subcontracts or incorporated by reference. To support this approach, the subcontractors urge this court to adopt the rule that arbitration is favored and whenever there is an opportunity to read two different versions into one contract, the one supporting arbitration will prevail.

Primer Paint Corp. vs. Flood Conklin Mgf., 388 U.S. 395, 87 S.Ct. 1801 (1967);

Pacific Investment Company vs. Townsend, 58 Cal.App.3d 1, 9, 129 Cal. Rptr. 489, 493 (1976);

Painters District Counsel No. 33 vs. Moen, 128 Cal.App.3d 1032, 181 Cal. Rptr. 17, 19;

Wilson Wear Inc. vs. United Merchants And Manufacturers, Inc., 713 F.2d 324 (7th Cir. 1983).

This is primarily for two reasons. First, arbitration, in many jurisdictions, means a quicker hearing. Second, arbitrators can supply needed specialized knowledge about the factual matters involved in the dispute. The former may not supply a basis for the adoption of the rule in the Commonwealth but the latter does.

The argument is also advanced that since the contract for the contractors of the hospital contemplated substantial "interstate commerce" the Federal Arbitration Act (9 USC § 1 et seq) governs the enforceability of the arbitration provisions.

If this is the case, then federal law and not local law governs the interpretation, validity and enforcement of an arbitration clause.

Be that as it may, the initial determination must be made if there is an arbitration provision incorporated by reference in the subcontracts.

The CNMI cites United States Steel Corp. vs. Turner Construction Co., 560 F.Supp. 871, 873 (SD N.Y. 1983) as authority that no arbitration provision can be read into the subcontracts.

834

The subcontractors point out that other cases have distinguished United States Steel and found arbitration provisions incorporated by reference in very similar, if not identical, contract provisions now before the court. Maxum Foundations, Inc. vs. Salas Corp., 799 F.2d 974, 978-79 (4th Cir. 1985); Starr Electric Company, Inc. vs. Basic Construction Company, 586 F.Supp. 964 (W.P.C.N.C. 1982); J.J.&H. Construction Co. vs. Richmond County Hospital Authority, 473 F.2d 212 (5th Cir. 1973); Uniroyal Inc. vs. A. Epstein & Sons, Inc., 428 F.2d 523 (7th Cir. 1970).

After a review of United States Steel and the cases cited by the subcontractors, the court concludes that United States Steel is not persuasive authority and that Maxum and the other cases present the accepted rule of incorporating by reference.

Thus it is concluded that the arbitration provisions of the general contract "flow down" to the subcontractors by virtue of subparagraph 5.3.1 of the General Conditions and Article II of the subcontract and provides the right to the subcontractors to force arbitration of their grievances.

Turner has noted that its situation is different than the subcontractors and indeed it is. Turner acknowledges its requirement to arbitrate with the CNMI but what it objects to is the inclusion of it in this lawsuit. The CNMI states that since there may be allegations of bad faith acts by Turner by the subcontractors, Turner should be joined.

In view of the fact that the CNMI's complaint will be dismissed for failure to state a claim, this effectively resolves Turner's objection. However, it is noted for the record that when the CNMI terminated Turner and stepped in Turner's shoes, the obligation of Turner to arbitrate with the subcontractors ended. It may be that in the subcontractors' arbitration proceedings it may be feasible or necessary to bring in Turner for a complete resolution of the disputes. Suffice to say now, there is no basis upon which Turner should be part of these proceedings.

IT IS ORDERED that the complaint of the Commonwealth of the Northern Mariana Islands be and the same is hereby dismissed as to all defendants for failure to state a claim upon which relief can be granted.

Dated at Saipan, CM, this 9th day of September, 1986.

Robert A. Hefner, Chief Judge